**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GERALD ISSOKSON, AS DULY APPOINTED PERSONAL REPRESENTATIVE OF THE ESTATE OF PEARL ISSOKSON, DECEASED, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>     PLAINTIFF,<br> vs.<br><br>CONNECTICUT GENERAL CORPORATION, INSURANCE COMPANY OF NORTH AMERICA, LIFE INSURANCE COMPANY OF NORTH AMERICA, TOWERS ADMINISTRATORS, INC.,<br><br>    DEFENDANTS. | Civil Action No.:<br><br><br><br>CLASS ACTION COMPLAINT<br><br><br><br><u>DEMAND FOR JURY TRIAL</u> |

   Plaintiff, Gerald Issokson, as the duly appointed personal representative of the Estate of Pearl Issokson ("Plaintiff" or "Ms. Issokson")[1], brings this action on behalf of the Estate of Pearl Issokson and all others similarly situated (the "Class") against Defendants Connecticut General Corporation ("CGC"), Life Insurance Company of North America ("LINA"), Insurance Company of North America ("INA"), and Towers Administrators, Inc. ("Towers") (collectively "Defendants"), and alleges upon information and belief and based upon the investigation of her counsel, as follows:

---

[1] *See* Exhibit ("Ex.") A (Letters of Authority For Personal Representative of the Estate of Pearl Issokson).

## NATURE OF THE ACTION

1.     After decades of collecting millions of dollars in long-term care insurance premiums from their policyholders nationwide, now Defendants are uniformly and improperly miscalculating the inflation protection benefits provided in the long-term care insurance at the expense of the policyholders.

2.     Defendants' systemic conduct reduces their exposure to costly long-term care claims, at the expense of their elderly and infirm policyholders.

3.     Defendants' scheme to save money contradicts the unambiguous policy language and marketing materials provided at the time of sale, which indicate the calculation of the inflation protection benefits are on a compound interest basis rather than a simple interest basis.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

5.     Venue is appropriate in this Court because Plaintiff is a citizen of the Commonwealth of Massachusetts, residing in Tisbury, Massachusetts, at the time of her death. Venue is also proper in this Court because Defendants systematically transact business in the Commonwealth of Massachusetts, and certain causes of action set forth in this Complaint, in part, arose in the Commonwealth of Massachusetts.

## THE PARTIES

6.      At the time of her death Ms. Issokson was a 92-year-old individual who was receiving home health care due to her physical and cognitive infirmities. Ms. Issokson passed away on April 20, 2015. Ms. Issokson was a certificate holder under the group long-term care insurance policy form number "ALT-1" issued and administered by Defendants.[2]  Ms. Issokson was owed benefits under the policy which Defendants did not pay in full, and was a citizen of the Commonwealth Massachusetts during the relevant time at issue.

7.      Gerald Issokson is Ms. Issokson's son and has been duly appointed to represent his mother's Estate in this litigation.

8.      Defendant CGC is a corporation incorporated, organized and constituted under the laws of Connecticut and has its principal place of business and headquarters in Connecticut. Defendant CGC is financially responsible for, over-sees, controls, administers, and manages claims made on the policies at issue through its total control and dominance of Defendant LINA. Defendant CGC directly owns 100% of Defendant LINA and controls and manages the daily operations of LINA. Defendants CGC and LINA are interdependent corporate entities with overlap in key officers.  Additionally, CGC and LINA have represented themselves to the State of Illinois government through their tax filings as a "unitary business group."[3] Importantly, for purposes of Illinois tax law, "unitary business groups" are "functionally integrated through the

---

[2] *See* Ex. B (Ms. Issokson's individual Certificate of Insurance) and Ex. C (the ALT-1 Group Master Policy).

[3] *See Nat'l Prod. Workers Union Tr. v. CIGNA Corp.*, No. 05 C 5415, 2007 WL 1468555, at *8 (N.D. Ill. May 16, 2007), *aff'd sub nom.*, *Nat'l Prod. Workers Union Ins. Tr. v. Cigna Corp.*, 665 F.3d 897 (7th Cir. 2011) ("…the fact that LINA and CGC consider their corporations to be a "unitary business group" for purposes of an Illinois tax return (see 35 ILCS 5/1501) simply means that the corporate structures of LINA's direct parent, CGC, and LINA are interdependent.").

exercise of strong management. For example, authority over such matters as purchasing, financing, tax compliance, product line, personnel, marketing, and capital investment is not left to each member." *See* Ex. D at 1 (Illinois Department of Revenue Schedule UB Instructions).

9.    Defendant LINA is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business, and is headquartered, in Pennsylvania. Defendant CGC owns 100% of Defendant LINA. Together with CGC as discussed above, LINA is financially responsible for, oversees, controls, administers, and manages claims made on the insurance policies that are the subject of this litigation.

10.    Defendant INA is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business, and is headquartered, in Pennsylvania. INA is the original underwriter of the Policies, sold the policies to the insureds, and upon information and belief, remains financially responsible for claim payments.

11.    Defendant Towers is a corporation organized under the laws of the State of New York and has its principal place of business and headquarters in the Commonwealth of Virginia. Towers is the designated "benefits administrator" for the policies, made claim decisions on the policies, and is one of the entities that sold the policies to class members originally.

12.    Defendants are the underwriters of the policies, have the authority to approve and/or deny claims under the policies, and are financially responsible for claims made on the policies and other liabilities in connection therewith.

## FACTUAL ALLEGATIONS

13.    In general, long-term care insurance provides benefits to an insured in the event that the individual's health deteriorates and requires a level of care that she cannot safely provide for herself.

14.     The specific policy forms at issue here are identified as the "ALT-1" group policy High Option Plus Plan, and other similarly-worded policies, issued and/or administered by the Defendants (the "Class Policies"). The Class Policies provide coverage for home health care services, as well as stays at long-term-care facilities, subject to the terms of the Class Policies.

15.     Coverage under the Class Policies was sold nationwide decades before the vast majority of claims were filed.

16.     The issues raised in this litigation are whether Defendants: (1) are improperly calculating the inflation protection benefit using a simple-interest, rather than compound-interest, formula; and (2) whether this improper calculation is an act of bad faith to save money.

17.     The Class Policies contain maximum benefit levels defined by the type of care received by the insured. The maximum benefit levels operate as a cap to the amount of money Defendants are liable to pay insureds who qualify for benefits.

18.     The dispute in this case is over how the maximum benefit levels in the Class Policies are calculated. Plaintiff believes that Defendants are utilizing benefit level maximums that are lower than they should be, thus improperly limiting claim payments for anyone who achieves the Defendants' lesser benefit cap, such as the Plaintiff. Defendants are calculating inflation protection based on simple-interest calculation, rather than compound-interest rates set-forth in the Class Policies.

**<u>The Relevant Policy Language</u>**.

19.     The Class Policies note the following, or substantially similar to the following, with respect to maximum benefit level increases:

The [maximum] benefits will automatically be increased by the lesser of the percent of increase in the Consumer Price Index during the prior calendar year or 5 percent.[4]

20.     This language indicates that increases to the benefit maximums should be calculated on a compound-interest basis. Defendants, however, calculate the increases on a simple-interest basis, defeating the unambiguous Class Policies' language and the reasonable expectations of the policy owners.

21.     The Defendants' marketing materials utilized in the solicitation and sale of the Class Policies indicate through an illustration chart that increases to the cost of "nursing home" rates over time were expected to increase on a ***compound*** interest basis rather than a simple-interest formula:



22.     At year one (1) in the chart above, the nursing home rate is $75/day and at year eleven (11) it is over the $120/day mark. As the marketing material above indicates, the "chart assumes nursing home rates start at $75 per day and increase at 5 percent per year."

---

[4] Ex. B, p. 11.

23.    If $75 were increased by 5% a year on a simple basis, at year eleven the rate would be $112.5. On a compound basis, however, the nursing home rate would be $122.17, *which is the amount reflected in the above chart at year eleven*.

24.    For Defendants to explain to insureds that care costs are increasing on a compound basis, but then to include an inflation benefit in the Class Policies that only increases on a simple basis *using almost identical language* demonstrates that Defendants knew the Class Policies provide compound interest protections: *compare* "[t]his chart assumes nursing home rates start at $75 per day and increase at 5 percent per year[,]" to "[t]he benefits will automatically be increased by the lesser of the percent of increase in the Consumer Price Index during the prior calendar year or 5 percent."

25.    Defendants intended for the Class Policies' inflation protection benefit to increase on a compound basis each year, and their attempt to avoid the plain meaning of the Class Policies is self-serving, bad faith conduct to avoid their financial obligations at the expense of the Class Policies' owners.

26.    Ms. Issokson filed a claim for home healthcare under her Class Policy, and was eventually reimbursed in the amount of $16,130.00, which Defendants indicated was the maximum amount available to Ms. Issokson based on the claim she submitted. This benefit maximum amount was calculated using a simple-interest formula, rather than a compound-interest formula. Ms. Issokson should have been paid approximately $2000 more than she was actually paid.

27.    On January 5, 2016 Plaintiff mailed a thirty-day demand letter via certified mail to Defendants seeking relief under M.G.L. c. 93A and c. 176D and identified the error in Defendants' calculation of the inflation protection benefit. Defendants offered no additional

7

benefits in response to the demand letter, and confirmed on February 4, 2016 that benefit maximums were in fact being calculated on a simple basis.[5] Plaintiff was not offered adequate relief by Defendants in their February 4, 2016 response.

## CLASS ALLEGATIONS

28.    This class action is brought on behalf of Ms. Issokson and all those similarly situated to recover for the harm caused by Defendants' systematic and repeated breaches of the Class Policies' terms, and to prevent Defendants from continuing to improperly underpay long term care claims in the future.

29.    Defendants have, and continue to, uniformly and systematically breach the terms of the Class Policies nationwide by applying a simple-interest formula to calculate benefit maximum levels rather than a compound-interest formula.

30.    Defendants limited Ms. Issokson's claim and other Class members' claims nationwide relying upon the same improper calculation.  Rather than abiding by the terms of the Class Policies, Defendants, affirmatively and deliberately, engaged in a scheme to categorically reduce their exposure to long term care insurance claims, which likely totals in the millions of dollars nationwide.

31.    All current policyholders in the Class seek injunctive relief that would prevent Defendants from continuing to apply a simple-interest calculation, rather than a compound calculation, to benefit level maximums in the Class Policies.

32.    Ms. Issokson seeks to represent the following Classes:

*Damages Class*: All current and former policyholders, nationwide, of any of the Defendants whose certificate of insurance contains this, or similar, language:

---

[5] Ex. E at 2.

"The benefits will automatically be increased by the lesser of the percent of increase in the Consumer Price Index during the prior calendar year or 5 percent[,]" and who had their benefit claim capped at a lesser sum due to Defendants' calculation of their maximum benefit(s) based on simple interest increases of their maximum benefit(s) rather than compound-interest increases.

*Injunctive Class*: All current policyholders, nationwide, of any of the Defendants whose certificate of insurance contains this, or similar, language: "The benefits will automatically be increased by the lesser of the percent of increase in the Consumer Price Index during the prior calendar year or 5 percent."

*Massachusetts Damages Sub-Class*: All current and former policyholders, residing in Massachusetts, of any of the Defendants whose certificate of insurance contains this, or similar, language: "The benefits will automatically be increased by the lesser of the percent of increase in the Consumer Price Index during the prior calendar year or 5 percent[,]" and who had their benefit claim capped at a lesser sum due to Defendants' calculation of their maximum benefit(s) based on simple interest increases of their maximum benefit(s) rather than compound interest increases.[6]

*Massachusetts Injunctive Sub-Class*: All current policyholders, residing in Massachusetts, of any of the Defendants whose certificate of insurance contains this, or similar, language: "The benefits will automatically be increased by the lesser of the percent of increase in the Consumer Price Index during the prior calendar year or 5 percent[,]".

Excluded from the Classes are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, and the Court. (collectively the "Class" or "Classes")

33.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed prior and up to the time when the Court determines whether class certification is appropriate.

34.    **Numerosity:**  The individual members of each Class are so numerous that joinder of all members is impracticable. On information and belief, there are several thousand

---

[6] Ms. Issokson is pursuing the M.G.L. C. 93A and C. 176D claim on behalf of the Massachusetts Damages and Injunctive Sub-Classes.

policyholders covered by the Class Policies.  And, upon information and belief, at least hundreds have had their claims for benefits limited based on Defendants' flawed calculation of the maximum benefits available to them.

35.    Although the precise number of members of the Classes cannot be ascertained until the parties conduct discovery, the number is large enough to satisfy numerosity.

36.    Moreover, the identities of the individual Class members, including their names and addresses, are readily ascertainable through Defendants' records.

37.    **Commonality:**  There are questions of law and fact that are common to Plaintiff and the Class members' claims.  These common questions include the following:

      a.  Whether Defendants' interpretation of the inflation protection provision in the Class Policies breaches the terms of the Class Policies;

      b.  Whether the Class was harmed by Defendants' breach of the Class Policies;

      c.  Whether Defendants' interpretation of the inflation protection provision in the Class Policies is an act of bad faith.

38.    **Typicality:**  Plaintiff's claims are typical of the claims of the Classes because of the similarity, uniformity, and common purpose of Defendants' unlawful conduct which each Class member has experienced or can be subjected to in the future.  Each Class member has sustained, will continue to sustain, or may sustain in the future, damages in the same manner as Plaintiff as a result of Defendants' wrongful conduct.

39.    **Adequacy of Representation:**  Plaintiff is an adequate representative for the Classes and will fairly and adequately protect the interests of the Classes.  Plaintiff is committed to vigorous prosecution of this action, has retained competent counsel who are experienced in class action litigation, and, in particular, consumer-related class actions against long-term care

insurance companies, and is motivated to seek relief and benefits not only for herself but also for members of the Classes.

40.    Plaintiff has retained law firms that are experienced in both class action and long-term care insurance litigation to prosecute this action. The firms are highly experienced in handling class action litigation matters and have the financial and other resources to meet the substantial costs and complex litigation issues inherent in this matter.

41.    **Requirements of Fed. R. Civ. Proc. 23(b)(3):** The common questions of fact and law listed above predominate over any individual questions of fact and law, and a class action is the superior method for resolving these issues.

42.    Specifically, a class action is superior because the issues relating to the Defendants' liability can be resolved on a class-wide basis, leaving only the issues of calculation of each Class member's individual damages using similar inputs and formulas.

43.    **Superiority:**  A class action is superior to individual actions because of the following non-exhaustive factors:

a.    Joinder of the Class members would be impracticable due to the number of anticipated Class members, and would create a hardship in the management of the case;

b.    The Class consists of elderly individuals, many of whom suffer from serious health problems including Alzheimer's disease and similar cognitive impairments, who are incapable of pursuing these matters on their own and are unlikely to even be aware of their rights and claims;

c.    Resolution of the Class members' claims on an individual basis would run the risk of inconsistent legal rulings and judgments;

11

d.      The interests of justice would be best served by resolution of all of the Class' claims in one judicial forum which would also be the most efficient way for the parties and the Court system to resolve these claims; and

e.      There are no anticipated management problems in handling this matter as a class action.

44.      **Requirements of Fed. R. Civ. Proc. 23(b)(1) & (2):**  Prosecuting each Class member's claims separately would result in a significant risk of inconsistent legal rulings and/or judgments that would create incompatible standards of conduct for Defendants.

45.      Furthermore, Defendants have acted in a similar manner, employing consistent general business practices, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

**COUNT I**
**BREACH OF CONTRACT**
**(ON BEHALF OF DAMAGES CLASS)**
**(AGAINST ALL DEFENDANTS)**

46.      Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully alleged herein.

47.      Defendants formed an agreement and entered into a contract with Plaintiff, the Class Policy, and the members of the Damages Class, which included offer, acceptance, and consideration.

48.      Pursuant to that Class Policy, Plaintiff and the members of the Damages Class paid money to Defendants in exchange for Defendants' promise to provide long-term care insurance coverage. Defendants received premiums in exchange for providing coverage under the Class Policies to Plaintiff and the members of the Damages Class.

49.     In exchange for the premiums paid, Defendants agreed to pay certain benefits to Plaintiff and the members of the Damages Class, without limitation, when the requirements under the Class Policies are met.  Specifically, Defendants agreed to adjust benefit maximums upwards on a compound basis, not on a simple basis.

50.     Plaintiff and the members of the Damages Class performed all of their obligations under the Class Policies.

51.     Defendants are obligated pursuant to the Class Policies to pay these claims subject to the appropriate maximum benefit amounts.  Defendants have failed to do so based on their under calculation of the inflation protection benefit, and thus under calculation of the maximum benefit amounts.

52.     As a direct and proximate result of Defendants' breaches of contract, Plaintiff and the Damages Class have suffered damages in an amount to be proved at trial.

**COUNT II**
**VIOLATIONS OF THE CONNECTICUT UNFAIR INSURANCE PRACTICES ACT**
**(Connecticut General Statute § 38a-815 et seq) AND THE CONNECTICUT UNFAIR**
**TRADE PRACTICES ACT (Connecticut General Statute § 42-110b et seq)**
**(ON BEHALF OF DAMAGES CLASS AND INJUNCTIVE CLASS)**
**(AGAINST DEFENDANT CGC)**

53.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully alleged herein.

54.     Defendant CGC has acted, as alleged throughout this Complaint, in the conduct of trade or commerce as defined in Connecticut General Statute § 42-110a(4).

55.     Defendant CGC is a domestic insurance company pursuant to Connecticut General Statute § 38a-815, as it is incorporated, organized and constituted under the laws of Connecticut.

56.    Pursuant to Connecticut General Statute § 38a-815, Defendant CGC is prohibited from engaging in unfair or deceptive acts or practices in the business of insurance.

57.    Because it is a domestic insurance company, Defendant CGC is prohibited from engaging outside the State of Connecticut in any act or practice defined in subsections (1) to (12), inclusive, of section 38a-816.

58.    Defendant CGC has engaged, and continues to engage in, unfair and deceptive acts and practices inside and outside the State of Connecticut as described throughout this Complaint by routinely, repeatedly, and improperly limiting Class Policies claims on the flawed basis that benefit maximums are increased on a simple, as opposed to compound, basis.

59.    As a matter of general business practice, Defendant CGC's actions violate Connecticut General Statute § 38a-816(6)(A) ("Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"); Connecticut General Statute § 38a-816(6)(F) ("not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"); Connecticut General Statute § 38a-816(6)(N) ("failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement").

60.    Defendant CGC's violations of the Connecticut Unfair Insurance Practices Act are violations of the Connecticut Unfair Trade Practice Act, Connecticut General Statute § 42-110b(a) and give rise to a cause of action under Connecticut General Statute § 42-110g(a).

61.    Defendant CGC's conduct is part of a general business practice that constitutes unfair and deceptive acts in violation of Conn. Gen. Stat. § 42-110b(a), in that their position with respect to the calculation of the inflation protection benefit is not at all unique to Ms. Issokson's

situation.  Rather, CGC's conduct applies to the calculation of all maximum benefit levels under all of the Class Policies, impacting thousands of insureds in a similar manner.

62.     As a direct and proximate result of Defendant CGC's violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a), Plaintiff and members of the Damages Class have suffered ascertainable losses under Conn. Gen. Stat. § 42-110g(a) in an amount to be proven at trial.   Further, because Defendant CGC's illegal conduct remains ongoing, Plaintiff also seeks injunctive relief pursuant to Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110g(d).

63.     Because of Defendant CGC's unfair and deceptive acts or practices, it has reaped ill-gotten profits and gains by withholding policy benefits that should have been paid and by collecting additional premiums that should have been waived, and which in equity it should be required to disgorge.

64.     Defendant CGC is liable, pursuant to Conn. Gen. Stat. § 42-110g(a), for punitive damages.

65.     Defendant CGC is also liable, pursuant to Conn. Gen. Stat. § 38a-816(15), for 15% interest on unpaid claims to Connecticut insureds.

66.     Defendant CGC is liable, pursuant to Conn. Gen. Stat. § 42-110g(d), for costs and reasonable attorneys' fees.

67.     In compliance with Conn. Gen. Stat. § 42-110g(c), a copy of this Complaint has been submitted via email to the Attorney General of the State of Connecticut and Connecticut's Commissioner of Consumer Protection on this date.   A copy has also been submitted to the Connecticut Insurance Department.

## COUNT III
## DECLARATORY RELIEF UNDER THE DECLARATORY JUDGMENT ACT
## (28 U.S.C. § 2201, *et seq.*)
## (ON BEHALF OF INJUNCTIVE CLASS)
## (AGAINST ALL DEFENDANTS)

68.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully alleged herein.

69.     Plaintiff brings this claim for relief on behalf of herself and the members of the Injunctive Classes.  An actual controversy has arisen and now exists between members of Injunctive Classes, on the one hand, and Defendants, on the other hand, concerning their respective rights and duties under the Class Policies, and similarly-worded policies.  More specifically, an actual controversy exists regarding Defendants' repeated, ongoing, and improper calculation of benefit maximum levels based on a simple, rather than compound, formula.

70.     A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order for the members of the Injunctive Classes and Defendants to ascertain their respective rights and duties with respect to Defendants' obligations under the Class Policies.

## COUNT IV
## BAD FAITH/ BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
## (ON BEHALF OF DAMAGES CLASS)
## (AGAINST ALL DEFENDANTS)

71.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully alleged herein.

72.     On January 5, 2016 Plaintiff mailed a thirty-day demand letter via certified mail to Defendants seeking relief under M.G.L. c. 93A and c. 176D and identified the error in Defendants' calculation of the inflation protection benefit. Defendants offered no additional

benefits in response to the demand letter, and confirmed on February 4, 2016 that benefit maximums were in fact being calculated on a simple basis.[7] Plaintiff was not offered adequate relief by Defendants in their February 4, 2016 response.

73.    Defendants, acting through their officers, agents, servants and/or employees, acted unreasonably and in bad faith in refusing to pay Plaintiff's claim in full and those of the Damages Class on the bases that benefit maximums are calculated on a simple basis.

74.    Defendants' justifications for limiting Plaintiff's claim and those of the Damages Class were arbitrary and capricious.  By repeatedly limiting these claims, Defendants improperly put, and continues to put, their financial interests above those of Plaintiff and members of the Damages Class.

75.    Defendants' prior and on-going conduct and refusal to provide the full benefits owed was not, and is not, predicated upon circumstances that furnished reasonable justification.

76.    Defendants' conduct constitutes bad faith as well as a breach of the covenant of good faith and fair dealing, and Plaintiff and the members of the Damages Class are entitled to all appropriate relief, including punitive damages and costs and attorneys' fees.

**COUNT V**
**VIOLATION OF M.G.L. C. 93A AND C. 176D**
**(ON BEHALF OF MASSACHUSETTS DAMAGES SUB-CLASS, AND**
**MASSACHUSETTS INJUNCTIVE SUB-CLASS)**
**(AGAINST ALL DEFENDANTS)**

77.    Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully alleged herein.

---

[7] Ex. E at 2.

78.    On January 5, 2016 Plaintiff mailed a thirty-day demand letter via certified mail to Defendants seeking relief under M.G.L. c. 93A and c. 176D and identified the error in Defendants' calculation of the inflation protection benefit. Defendants offered no additional benefits in response to the demand letter, and confirmed on February 4, 2016 that benefit maximums were in fact being calculated on a simple basis.[8] Plaintiff was not offered adequate relief by Defendants in their February 4, 2016 response.

79.    At all times relevant hereto, Defendants have been engaged in trade or commerce as those terms are defined under M.G.L c. 93A.

80.    As explained throughout this Complaint, Defendants have committed acts and followed practices substantially within the Commonwealth of Massachusetts, with respect to their limitation of all claims in Massachusetts under incorrect maximum benefit calculations based on misapplication of the inflation protection feature in the Class Policies. Calculating the maximum benefit amounts using a simple, rather than compound, calculation constitutes unfair and deceptive acts and practices in the conduct of a trade or commerce as prohibited by M.G.L. c. 93A and c. 176D.

81.    Defendants have committed and continue to commit acts and followed practices with respect to Plaintiff, the Massachusetts Damages Sub-Class, and the Massachusetts Injunctive Sub-Class which constitute unfair and deceptive acts and practices in the conduct of trade or commerce, and violated M.G.L. c. 93A by these oppressive acts and omissions.

82.    Defendants have committed and continue to commit numerous unfair, oppressive, and deceptive acts, practices and omissions in the business of insurance against Plaintiff, the

---

[8] Ex. E at 2.

18

members of the Massachusetts Damages Sub-Class, and the members of the Massachusetts Injunctive Sub-Class in violation of M.G.L. c. 176D.

83.    Defendants' violations of M.G.L. c. 176D constitute violations of M.G.L. c. 93A.

84.    Defendants materially violated M.G.L. c. 93A and 176D by their oppressive acts and omissions.

85.    Defendants' unfair and deceptive acts and practices were performed willingly and knowingly.

86.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiff and the members of the Massachusetts Damages Sub-Class and the Massachusetts Injunctive Sub-Class suffered damages, are entitled to treble damages plus interest, injunctive relief, and attorneys' fees and costs.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of the putative Damages Class, Injunctive Class, the Massachusetts Damages Sub-Class and the Massachusetts Injunctive Sub-Class request:

(a) Certification of this action as a class action as set forth herein and designating Plaintiff as the Class Representative of, and their attorneys' as class counsel for, the Classes described above;

(b) judgment against Defendants for a sum in excess of $5,000,000 for policy benefits, including benefits that should have been paid but were not;

(c) a refund of all premiums collected that should not have been collected;

(d) reinstatement of policies otherwise cancelled for lack of coverage (past, present, and future) for Defendant's breach of this contract;

(e) compensatory, consequential, statutory and punitive damages and interest;

(f) declaratory and injunctive relief to prevent Defendants' illegal conduct in the future;

(g) an order for Defendants to disgorge all ill-gotten profits and gains related to the illegal practices described herein;

(h) attorneys' fees, costs, and any other relief to which Plaintiff and the members of the Classes may be entitled; and

(i) such other and further relief as allowed by law and/or as is equitable under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 17, 2018

THE PLAINTIFF,
GERALD ISSOKSON, AS DULY APPOINTED PERSONAL REPRESENTATIVE OF THE ESTATE OF PEARL ISSOKSON, DECEASED, BY HIS ATTORNEYS


*/s/ Sean K. Collins*

SEAN K. COLLINS (BBO# 687158)
Law Offices of Sean K. Collins
184 High Street, Suite 503
Boston, MA 02110
Telephone: 617-320-8485
Fax: 617-227-2843
sean@neinsurancelaw.com

LIONEL Z. GLANCY
EX KANO S. SAMS II
MELISSA WRIGHT
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Fax: 310-201-9160
lglancy@glancylaw.com
esams@glancylaw.com
mwright@glancylaw.com

JEFFREY GOLDENBERG
Goldenberg Schneider, LPA
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202
Telephone: 513-345-8291
Fax: 513-345-8294
jgoldenberg@gs-legal.com

JONATHAN M. FEIGENBAUM (BBO# 546686)
Law Offices of Jonathan M. Feigenbaum
184 High Street, Suite 503
Boston, MA 02110

21

Telephone: 617-681-7815
Fax: 617-227-2843
jonathan@erisaattorneys.com

Attorneys for Plaintiffs and the Classes